# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAITLIN STOLZENTHALER, *Plaintiff*, v. SHOWCASE PUBLICATIONS, INC., *et al.*, *Defendants*. | Civil Action No.: 18-cv-04019 (PGS-LHG) **MEMORANDUM AND ORDER** |

Presently before the Court is Defendant Showcase Publications, Inc.'s Motion for Partial Dismissal of Plaintiff's Complaint pursuant Fed. R. Civ. Pro. 12(b)(6). (ECF No. 11). Specifically, Defendants seek dismissal of Count VI of Plaintiff's Complaint, wherein she alleges Intentional Infliction of Emotional Distress (hereinafter, "IIED"). For the reasons discussed herein, Defendants' motion is denied.

## BACKGROUND

This cases arises from allegations of wrongful termination. Plaintiff Caitlin Stolzenthaler was a data entry clerk for Showcase Publications, Inc. (Complaint at ¶¶ 8, 17). Throughout her employment, Plaintiff claims she was "subjected to numerous acts of sexual harassment, sex discrimination, retaliation and forced to endure a hostile work environment." (*Id.* at ¶ 18). Specifically, Plaintiff claims that Defendants Richard Delile, Showcase Media's President, and Robert Draper, Plaintiff's supervisor, regularly harassed her. According to the Complaint, Defendant Draper made sexual comments regarding Plaintiff's figure, such as "You're such a cutie, you must not be married and you probably don't have kids because you have a young-looking body." (*Id.* at ¶ 19). When Draper took her to lunch, Plaintiff claims he discussed with

1

her his sex life and, in another conversation, discussed the number of prostitutes he has had sex with. (*Id.* at ¶¶ 20-21). In addition, Draper allegedly forwarded inappropriate pictures, with sexual innuendos captioned within, to Plaintiff. For instance, in November 24, 2016, Draper forwarded a picture to Plaintiff of a man cross-dressing, with the caption, "Hi, I'm Caitlyn from Auto Shoppper?!" (*Id.* at ¶¶ 22-23). Plaintiff purportedly responded, "Oh wow. Accurate. Lol." (*Id.*).

During this same timeframe, Plaintiff began a brief relationship with Defendant Delile, which ended the following month. (*Id.* at ¶ 24). When the two ended their relationship, Plaintiff expressed to Delile a desire to remain workplace friends. (*Id.* at ¶ 25). However, Plaintiff claims that Delile "subject[ed] [her] to regular unwelcome sexual conduct and comments" by continuing to ask Plaintiff out on dates. (*Id.* at ¶ 25).

In December 2016, Plaintiff claims that Draper continued to harass her. He continued to send inappropriate messages to her, such as a picture of a little boy wearing a t-shirt that said, "I fuck on the first date." (*Id.* at ¶ 27). During a client meeting, Plaintiff alleges that Draper continued to caress her legs, despite her efforts to push him away. (*Id.* at ¶ 29). In February 2017, Draper caressed the back of Plaintiff's legs and, when she objected, he replied that he was "just fixing [Plaintiff's] bell bottoms." (*Id.* at ¶ 30). A few days later, Draper made a comment about Plaintiff's breasts saying, "You are bouncy today." (*Id.* at ¶ 31). When Plaintiff inquired as to what he was referring to, Draper responded, "Must be the shirt you're wearing." (*Id.*).

In early March, Draper promoted Plaintiff to Social Media Manager; thereafter, on March 24, 2017, Delile posted a pornographic picture on his personal Instagram with the caption "I got the raise" and "I know someone like this!" (*Id.* at ¶ 34). Plaintiff claims this was in retaliation for her refusal to date him and she was humiliated and offended by the post. (*Id.*). In response, Plaintiff spoke with her manager, Jarod Vanna, and Stephanie Aminao, a Human Resources representative,

about the harassment she continued to experience from both Draper and Delile. (*Id.* at ¶ 33). However, no corrective action was taken. (*Id.* at ¶ 35).

On May 19, 2017, Plaintiff notified Vanna that she would be off from May 22 through May 25, 2017 to care for her cat. (*Id.* at ¶ 36). Apparently, another co-worker took issue, and posted a picture on Delile's personal Facebook page, with the caption "WHORE" and comment "7 days off for a cat?" (*Id.* at ¶ 37). Delile purportedly responded with a picture of a dumpster fire and the comment, "This sums up the whole situation and degenerate pieces of trash involved." (*Id.*). Plaintiff claims that she was humiliated by the picture, which was publicly shared with co-workers. Plaintiff reported this harassing episode to Vanna, explaining that she "felt unsafe in the hostile work environment and that she feared for her safety." (*Id.* at ¶ 39). Vanna then forwarded Plaintiff's concerns to Draper and Defendant Eric Osbjornson, a Showcase Media Production Manager. (*Id.* at ¶ 40). Again, no corrective action was taken.

On June 4, 2017, Draper ordered that Plaintiff submit a formal complaint, in writing, and explained that he would not discuss the issue any further, unless authorized by counsel. (*Id.* at ¶ 40). Two days later, Plaintiff submitted the written complaint to Draper. (*Id.* at ¶ 41). The following day, Draper informed Plaintiff that he had completed investigating the complaint, concluding:

> Your complaint has been addressed and will be handled during working hours tomorrow . . . rest assured that you will not be bothered by comments by that boy or any other employee . . . to my knowledge . . . these people are older immature boys . . . as always, you can govern yourself accordingly.

(*Id.* at ¶ 42). However, that same day Draper notified Plaintiff of her termination. (*Id.* at ¶ 43).

As a result of Defendants' conduct, Plaintiff claims she was "humiliated, degraded, victimized, embarrassed, and emotionally distressed." (*Id.* at ¶ 45). Specifically, she claims to suffer regular panic attacks and nightmares and has difficulty sleeping and eating. (*Id.* at ¶ 47).

## LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397-98 (3d Cir. 2000).

## DISCUSSION

Here, Defendants seek dismissal of Count VI of Plaintiff's Complaint, which asserts an IIED claim. Specifically, because the Complaint does not demonstrate conduct that was extreme or outrageous, Defendants contend dismissal of Count VI is warranted. The Court disagrees.

"To properly allege an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must claim that (1) the defendant intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe." *Acevedo v. Monsignor Donovan High Sch.,* 420 F. Supp. 2d 337, 348 (D.N.J. 2006). Plaintiff must also allege that the defendant's conduct was "so

4

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988) (internal quotation marks omitted)). In general, there must be proof that the emotional stress is "so severe that no reasonable person could be expected to endure it." *Tarr v. Ciasulli*, 853 A.2d 921, 924 (N.J. 2004) (internal quotation marks and citation omitted). In determining the severity of the emotional distress, New Jersey courts say that "aggravation, embarrassment, an unspecified number of headaches, and the loss of sleep" are insufficient to make an IIED claim. *Buckley*, 544 A.2d at 864. However, emotional distress has been considered sufficiently severe where it interferes with "day-to-day activities" or requires psychiatric counseling. *Harris v. Middlesex Cty. College*, 801 A.2d 397, 406 (N.J. Super. App. Div. 2002).

Here, Defendants rely principally on *Obendorfer v. Gitano Group*, 838 F. Supp. 950 (D.N.J. 1993), in support of their contention that the conduct alleged in the Complaint does not rise to the level of "extreme or outrageous." In *Obendorfer*, the plaintiff was subjected to degrading and offensive comments such as "women belong in the kitchen," "women are inferior," and suggestions that her fiance – a lawyer—was cheating on her like all other lawyers. *Id.* at 952. In concluding that this conduct failed to amount to the level of outrageous, the Court explained:

> Absent other conduct, these insults, no matter how out of touch they are with today's respect for the equality of women, are still nothing more than verbal assaults all to[o] common in today's rude and inconsiderate social and business interactions. A court is ill-equipped to punish lack of respect and consideration for one's fellow's feelings, and therefore New Jersey has prescribed a heavy burden for one alleging intentional infliction of emotional distress. The court must conclude that these insults, no matter how ill-advised, do not reach the threshold prescribed by the New Jersey courts. A civilized community, by definition, must be able to tolerate some friction between its members without resorting to litigation over every verbal insult, actual or perceived. Thus, the conduct here alleged is not "utterly intolerable in a civilized community."

*Id.* at 955. Even if the Court were persuaded by *Obendorfer*'s reasoning, the facts alleged in the present matter are far more outrageous and extreme than those in *Obendorfer*. The *Obendorfer* case was decided 25 years ago in 1993 – times have changed. In her Complaint, Plaintiff identifies (1) numerous occasions where her supervisor touched her, without her consent; (2) her employer posted inappropriate comments about her on social media; (3) both (Delile and Draper) regularly directed sexual innuendos and propositions towards her; and (4) they failed to remediate their actions. When viewing all of these facts in Plaintiff's favor, there is more than enough alleged in the Complaint to infer outrageous and extreme conduct and a plausible claim for IIED. Plaintiff alleges that all individual defendants are being sued in this Court. Although this Complaint is not sufficient as to what actions are being alleged against each defendant, there is a plausible claim. As such, Defendants' motion for partial dismissal is denied.

## CONCLUSION

The Court having considered the submissions of the parties, and hearing oral argument; and for good cause shown, and for all of the foregoing reasons,

IT IS on this 13th day of August, 2018,

ORDERED that Defendants' Motion to Dismiss (ECF No. 11) is DENIED.

_____
PETER G. SHERIDAN, U.S.D.J.